## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-3:06-008-4 |
| v. | § | (C.A. No. C-3:11-190) |
| | § | |
| BRODERICK WADE YORK , | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Broderick Wade York's (York) motion and amended motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. D.E. 376, 399.[1] Also before the Court are the government's response and response to amendment. D.E. 390, 410. For the reasons stated herein, the Court denies York's § 2255 motion and also denies him a Certificate of Appealability.

### I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II.  BACKGROUND

**A.  Procedural History**

John Franklin, Keelon Senegal, Arthur Lee Winn, Jr., and Broderick Wade York were each the subject of federal criminal Complaints in March 2006 regarding the August 11, 2005, robbery of University Federal Credit Union in Galveston, Texas. Each was arrested or

---

[1]  Docket entry references are to the criminal case.

otherwise transferred into federal custody the same month. The men made their initial appearance in federal court shortly after their arrests and were appointed counsel. Each defendant was detained without bond pending trial.

Franklin and Winn each pled guilty in the first part of 2006 to the August 2005 robbery of the University Federal Credit Union with a firearm, aiding and abetting, and to two counts of using and carrying a firearm during a crime of violence and aiding and abetting. D.E. 298, 300.

The second superseding indictment charged Senegal and York with conspiracy and with the August 2005 robbery of the University Federal Credit Union with a firearm, aiding and abetting,[2] and two counts of using and carrying a firearm during a crime of violence[3] and aiding and abetting, but added additional felon in possession and witness tampering crimes.[4] D.E. 108. Senegal and York were arraigned on the second superseding indictment on December 15, 2006.

A joint jury trial for Senegal and York began in July 2007 and lasted a week. At the conclusion of trial, both Senegal and York were convicted on all counts. D.E. 178.

---

[2]   Conspiracy to commit bank robbery was charged pursuant to 18 U.S.C. § 371. Bank robbery and aiding and abetting bank robbery was charged pursuant to 18 U.S.C. §§ 2113(a) and (d), 2.

[3]   Counts Three and Seven charged brandishing and using a firearm to commit a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1)(A), 2.

[4]   Counts Five and Six charged witness tampering and aiding and abetting in violation o f 18 U.S.C. §§ 1512 (a)(1)(C),(k), and 2. Counts Seven and Eight charged felon in possession of a firearm and aiding and abetting pursuant to 18 U.S.C.  §§ 924(c)(1)(A), (a)(2), (g)(1), (e) and 2.

York was sentenced to: 60 months on Count One, 300 months on Count Two, Life on Count Three, 120 months on Count Four, 240 months on Count 5, 240 months on Count Six, Life on Count Seven to run consecutive to all other counts, and 120 months on Count Eight. Counts One, Two, Four through Six, and Count Eight all run concurrently. Count Three runs consecutively to the others and is followed by Count Seven which runs consecutively to Count Three. D.E. 296.

York appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed his conviction and sentence in March 2010. United States v. York, 371 Fed. App'x. 494 (5th Cir., Mar. 23, 2010) (per curiam) (designated unpublished).

York timely filed a motion pursuant to 28 U.S.C. § 2255 in December 2010, that he later requested be dismissed without prejudice. The Court granted his motion to dismiss. York filed a new, and timely, § 2255 motion.

## B.    Factual Background

The Fifth Circuit Court of Appeals summarized the evidence as follows:

1. *The University Federal Credit Union Robbery*

In July 2005, Arthur Winn and John Franklin successfully robbed the Coastal County Credit Union. Winn and Franklin decided to try their luck again, and set their sights on the University Federal Credit Union ("UFCU") in Galveston, Texas. They recruited Senegal, York, and York's cousin, DeWayne Lekeith "Ki–Ki" Joseph, to assist with the heist, although Joseph later backed out of the scheme.

The four decided that Winn would steal two cars and serve as the getaway driver, Franklin would hold open the door to the bank, and Senegal and York would enter the bank to carry out the robbery. In August 2005, the four drove a stolen Chevrolet Suburban to the UFCU and commenced the robbery according to their assigned roles. Senegal and York obtained almost $10,000 from the bank tellers, and then ran back to the Suburban.

3

Once inside the Suburban, a dye pack that one of the tellers had slipped into the money bag exploded. At that moment, the Suburban stopped running. The four abandoned the Suburban and continued their escape in a stolen Buick that Winn had parked nearby as a backup getaway vehicle.

Because they feared that someone had followed them, they decided to ditch the Buick and continue fleeing in Franklin's personal Chevrolet Impala. The four parked the Buick close to where Franklin had left his car, and waited for him to retrieve it and return for them. Franklin, still scared that someone had followed him, never picked up the others.

While Winn, Senegal, and York waited for Franklin, Winn saw Tony Mason drive past. Winn, who knew Mason from his days in a street gang, flagged Mason, and Mason agreed to drive the three to Winn's mother's house. While en route, York began to discuss the botched robbery, and Winn quickly instructed him to be quiet. Upon arriving at Winn's mother's house, Senegal gave Mason a handful of money from the UFCU robbery.

## 2. *Senegal and York's Possession of a Lorcin Pistol*

A few days after the UFCU robbery, Senegal told his cousin, Jasmine Epps, about his involvement. Around this time, Epps witnessed Senegal with a silver gun while visiting Senegal's girlfriend, Tesse Rolland. Epps saw Senegal and Rolland playing with the firearm before Rolland took the gun into her bedroom. Rolland testified to the grand jury that she saw York give the gun to Senegal. At trial, however, Rolland recanted and testified that she knew nothing about the weapon.

Police officers seized the firearm while arresting Epps at Rolland's apartment sometime later for an unrelated crime, and identified the weapon as a Lorcin pistol. Upon her release, Epps called Senegal at Rolland's apartment, at which point Senegal cursed and shouted at Epps because he did not want her to tell the police about his participation in the UFCU robbery. Epps later identified the recovered Lorcin pistol as the same one she observed Senegal and Rolland playing with shortly after the UFCU robbery.

### 3. *The Attempted Murder of Tony Mason*

York began to fear that the police would associate him with the UFCU robbery and decided to seek help from Joseph. York discussed the botched robbery with Joseph, detailing the various ways he believed the police could tie him and the others to the crime. Later, Senegal and York heard that the police had arrested Mason for traffic warrants. Fearing that Mason would implicate them in the UFCU robbery, Senegal and York contacted Joseph again to discuss killing Mason.

In late September 2005, Joseph, Senegal, and York drove a stolen Jeep Cherokee while searching for drug dealers to rob. According to Joseph, at some point during the drive, York started to get upset with him. Joseph asked that the two let him out of the Jeep, and Senegal and York complied.

After leaving Joseph, Senegal and York drove to Mason's house, donning bandanas over their faces. Senegal, with his gun drawn, approached Mason while Mason worked on his car. When he attempted to fire, however, his gun jammed. York decided to try with his weapon, and successfully shot Mason once. Mason fled into the courtyard of his apartment building, but fell after a short distance. York approached Mason to shoot him a second time, but his gun also jammed before he could fire another round. Mason stood up and continued his escape, and eventually the paramedics found him. Mason remained in a coma for nearly a month, but survived.

### 4. *The Robbery of Adrian DeVault*

Later that evening, Senegal and York approached Adrian DeVault while DeVault sat in his car in an apartment parking lot. They pulled their weapons and demanded DeVault's valuables, securing a chain, a black Movado watch, a white gold diamond bracelet, and about $350 in cash. They also ordered DeVault out of the car and tried to steal it, but failed when they could not get the car into gear. DeVault returned fifteen minutes later to find his car where he had left it, still running with the keys in the ignition. DeVault drove back to his house, and upon arrival, found a .38 revolver that one of the robbers had left inside the vehicle.

DeVault did not report the robbery to the police, but a detective contacted him about a month later. DeVault corroborated the detective's account of the robbery, and turned over the firearm. At trial, Winn identified the firearm as the same one that York carried during the UFCU robbery, and a Texas Department of Public Safety expert testified that the bullet extracted from Mason's body matched the firearm recovered from DeVault's car.

The morning after the Mason shooting and the DeVault robbery, York met with Joseph. During their conversation, York reported the successful robbery and the unsuccessful attempt on Mason's life. York also showed Joseph the black Movado watch they had stolen.

A few days after the robbery, one of the robbers pawned a black Movado watch and a gold bracelet. Later, DeVault accompanied a law enforcement officer to the pawn shop and identified the pawned items as those stolen from him. An employee of the pawn shop produced pawn slips for the items with Senegal's signature.

Some time after the Mason shooting, Winn and York ended up in the same jail cell. While there, York discussed the Mason shooting with Winn in great detail, and stated that he shot Mason with the same .38 revolver he had used in the UFCU robbery. A few days after the initial conversation, York told Winn about the DeVault robbery, describing their failure to steal the car and how they inadvertently left a gun in the vehicle.

5. *The Texas City Arrest of York and Joseph*

In early October 2005, Texas City Police officers arrested York and Joseph in a stolen Buick. Inside the car, officers found a .357 bulldog snub nose revolver that belonged to York, and a Colt .45 firearm that belonged to Senegal. At trial, Joseph identified Senegal's Colt .45 as the same weapon that jammed during the unsuccessful attempt on Mason's life.

York, 371 Fed. App'x. at 496-98.

## III.  MOVANT'S CLAIMS

York raises multiple claims of ineffective assistance of counsel on the grounds that counsel failed:

1) to move for acquittal after the government failed to offer evidence of the Credit Union's insured status,

2) to move for dismissal of the indictment for violation of his Speedy Trial rights,

3) to object to the district court's improper questioning of a witness,

4) to move to recuse Judge Kent,

6

5) to renew post-verdict motions after Judge Kent recused himself, and

6) to request certification of the record after Judge Kent recused himself.

York filed an amended motion asserting the following additional claim of ineffective assistance by trial counsel because he failed to move for a judgment of acquittal on Count Six.

York also claims that appellate counsel was ineffective because he failed to argue

1) that the district court abused its discretion when it denied the jury access to trial transcripts during deliberations and

2) that the indictment was multiplicitous.

## IV.  ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

Furthermore, a defendant may not raise an issue for the first time on collateral review without first showing "cause" for the procedural default, and "actual prejudice" resulting

from the error. United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). The "cause and prejudice standard presents a "significantly higher hurdle" than the plain error standard applied on direct appeal. United States v. Frady, 456 U.S. 152, 166 (1982). "[A] collateral challenge may not do service for an appeal." Id. at 165.

**B**.     **Standard for Claims of Ineffective Assistance of Counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (citing Evitts v. Lucey, 469 U.S. 387, 394 (1985); Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir.1998)). Counsel's appellate performance is judged under the same Strickland, standard applicable to trial performance. 466 U.S. 668 (1984). "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)).

## C.  Alleged Ineffective Assistance of Counsel

### 1. *Counsel's failure to move for acquittal on the bank robbery charges*

York claims that the government failed to prove an essential element of Count Two, that the University Federal Credit Union was federally insured. York further claims that counsel's failure to file a motion for acquittal on that basis constituted ineffective assistance of counsel. York's claim is contradicted by the record.

Maria Nita Martinez, the government's first witness, testified that the University Federal Credit Union was federally insured by the NCUA, National Credit Union Administration. D.E. 325 at p. 142. The Government's Exhibit 1, a copy of the certificate issued by the NCUA, was admitted during her testimony. York's complaint is without merit. There was no basis for counsel to move for acquittal on that issue.

### 2. *Counsel's failure to seek dismissal of the indictment on Speedy Trial grounds*

9

York claims that his right to a speedy trial was violated by the proceedings in this case. He claims counsel's failure to move to dismiss the indictment on that basis constituted ineffective assistance of counsel. D.E. 376 at p. 6. York claims that his right to a speedy trial was violated by June 22, 2006, because too much time had elapsed without his being tried. Id. at p. 7.

The Speedy Trial Act is found at 18 U.S.C. § 3161 and provides various deadlines, including the time between arrest and indictment and between first appearance and trial. The statute also excludes certain time periods from the calculation. York claims that the period between his initial appearance and trial was excessive because he was not tried within 70 days from his first appearance. 18 U.S.C. § 3161(c)(1).

York made his initial appearance in federal court on March 29, 2006. D.E. 28. He and his co-defendants were indicted on April 10, 2006. The speedy trial clock began to run from the date of indictment. 18 U.S.C. § 3161(c)(1).

York was originally set for trial on June 19, 2006. On June 7, 2006, the defense attorneys and the AUSA held a telephone conference with the Magistrate Judge and orally discussed the need for further time to investigate. The parties advised the Magistrate Judge and that a joint motion for continuance would be filed. The 70 days after indictment expired on June 19, 2006.

On June 22, 2006, York's counsel filed a motion to continue the trial for 90 days on the grounds that the case was complex and all counsel agreed to the continuance. The following day, the Court certified the case as complex and set a status hearing after which the case was set for November 6, 2006. In the Order declaring the case to be complex and

10

continuing the trial, the federal Magistrate Judge made findings that setting the case for trial within 70 days would result in a miscarriage of justice to the parties and that the ends of justice outweighed the interests of the public and the Defendants to a speedy trial. The scheduling order also made a finding regarding the interests of justice.

By June 23, 2006, the date York cites in his motion, the Magistrate Judge had already continued the trial date based upon the complexity of the case, the need for further investigation, and had made the required findings pursuant to the Speedy Trial Act.

Considering this joint endeavor, no defense attorney would have had the gall to sandbag the courts or the United States for failing to provide a speedy trial. Delay was sought by the defense. But even if a motion was filed, it would have been denied, or if granted, only without prejudice. See United States v. Blank, 701 F.3d 1084, 1088 (5th Cir. 2012) ("whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal.").

This Court begins with the presumption that  counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. York does not claim that he requested counsel to file a motion for speedy trial, nor does the record reflect that he did. "Counsel's conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel unless the chosen strategy was so poor that it robbed the defendant of any opportunity to get a fair trial." Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997).

Informed strategic decisions of counsel are to be given a strong measure of deference and should not be second guessed. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1998).

On this record, York has not met his burden to show that counsel's decision not to file a motion to dismiss the indictment based upon the Speedy Trial Act in June 2006 was the result of anything other than strategy or that York suffered any prejudice from the delay.

### 3. *Counsel's failure to object to the Court's allegedly improper questioning of Officer Miller*

York complains of the district court's questioning of Officer Miller regarding Tony Mason's condition after he was shot.[5] This issue was raised on appeal as an example of bias by the district judge. The Fifth Circuit Court of Appeals found no error. "We find that the district court's limited questioning of the officer was not inappropriate. Federal Rule of Evidence 614(b) allows the district court to "interrogate witnesses, whether called by itself or by a party," and we have held that "[a] federal district judge may comment on the evidence, question witnesses, bring out facts not yet adduced, and maintain the pace of the

---

[5]    A. Before they completely took him off we got all we got out of him, just unknown black male. Then they kept working on him so we left him alone and tried to get other witness statements.
MR. IMPERATO: Pass the witness.
THE COURT: Let me ask you something before they do it again. Have you encountered other shooting victims?
THE WITNESS: Yes, sir.
THE COURT: Are they often in shock?
THE WITNESS: They're often very -- yes, sir.
THE COURT: Does that affect their judgment, their perception, their ability to communicate?
THE WITNESS: I'm assuming it can, sir, yes.

D.E. 329 at pp. 986-87.

trial by interrupting or setting time limits on counsel." <u>United States v. York</u>, 371 Fed.

App'x. at 506. The court further held  that "the federal judge's *de minimus* examination did

not prejudice either Senegal or York." <u>Id.</u> The rule is also expressed in the following way,

> a federal judge ... may comment on the evidence, may question witnesses and
> elicit facts not yet adduced or clarify those previously presented, and may
> maintain the pace of the trial by interrupting or cutting off counsel as a matter
> of discretion. Only when the judges conduct strays from neutrality is the
> defendant thereby denied a constitutionally fair trial.

<u>United States v. Lankford</u>, 196 F.3d 563, 573 (5th Cir. 1999) (quoting <u>Moore v. United</u>

<u>States</u>, 598 F.2d 439, 442 (5th Cir.1979)). In light of the rule and the case law, counsel's

failure to object likely was based upon his analysis that the district court had not strayed

beyond permissible questioning and it is unlikely on this record, that any objection, much

less a motion for mistrial, would have been sustained or granted. York has failed to meet his

burden to demonstrate either error on counsel's part or prejudice.

4.  *Counsel failed to file a motion to recuse Judge Kent*

York complains that counsel should have filed a motion to recuse Judge Kent on the grounds that Judge Kent was disabled due to the sexual harassment charges filed against him. York questions when counsel became aware of the Court's conduct and of an investigation. D.E. 376 at p. 9.

Judge Kent's cases were reassigned on August 23, 2007, five weeks after the conclusion of York's trial, by order of the undersigned who was then the Chief Judge of the Southern District of Texas. On December 20, 2007, the Judicial Council of the Fifth Circuit Court of Appeals issued an Order acknowledging that there was an on-going judicial investigation into allegations of misconduct against Judge Kent. At that time there were no indications of criminal wrongdoing. The December 2007 Order recited that Judge Kent agreed not to hear any cases in which the government was a party. Docket No. 07-05-351-0086, In re Complaint of Judicial Misconduct Against United States District Judge Samuel B. Kent Under Judicial Conduct and Disability Act of 1980, December 20, 2007.

York had already been convicted by a jury by the time Judge Kent was no longer hearing cases involving the government, but had not yet been sentenced. York does not claim or present evidence that counsel should have known that Judge Kent was under judicial investigation before trial. He claims only that counsel should have moved for a mistrial in January 2008.

York's failure to state facts related to his case, other than broad allegation of presumptive bias, does not state a constitutional violation. York has not provided the kind of factual detail that would be required for a motion to recuse, nor has he stated that Judge

14

Kent harbored any personal bias or prejudice as a ground for recusal. It is York's burden to demonstrate a basis for counsel to file the motion he claims should have been filed.

Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. <u>United States v. Woods</u>, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); <u>see also</u> <u>United States v. Jones</u>, 614 F.2d 80, 82 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim."). York's claim is conclusory and is without merit.

5.  *Counsel failed to renew his post-verdict motions after Judge Kent's recusal and failed to request that the record be certified*

York claims that counsel was ineffective on the grounds that he did not re-urge his post-trial motions to the judge appointed to hear the case after Judge Kent was recused and did not request that the record be certified before his sentencing.[6] York cites no authority for his position and does not claim any prejudice from these omissions. York's claim, as in his claim that counsel should have moved to recuse Judge Kent, is conclusory and does not state a claim of constitutional magnitude. <u>Woods</u>, 870 F.2d at 288 n. 3; <u>Jones</u>, 614 F.2d at 82.

6.  *Appellate counsel was ineffective for his failure to argue that the district court abused its discretion when it denied trial transcripts to the jury during deliberations*

After the jury retired for deliberations, the jury sent a note to the district judge requesting trial transcripts. The record reflects the following,

> THE COURT: All right. We have a note from the jury.
> Time: 2:20 p.m. The note says -- and be seated, please. "We

---

[6]  Rule 25(a) of the Federal Rules of Criminal Procedure provides that any judge assigned to a court may complete a jury trial if, the judge before whom the trial began cannot proceed *and* "the judge completing the trial certifies familiarity with the trial record. <u>Id.</u> (emphasis added). This provision does not apply to this case because Judge Kent completed the jury trial.

cannot find a copy of transcript to refer to at this time.

Can we have a copy sent to us ASAP?"
I assume they're referring to a trial transcript,
which is ludicrous on its face. I propose to tell them that a
trial transcript is not available. You will have to rely upon
your individual and collective recollections in deciding this
verdict. Is that agreeable to the Government?
MR. IMPERATO: That's exactly what I would say,
Judge.
THE COURT: And to the defendants?
MR. PODOLSKY: Yes, Your Honor.
MR. COX: Yes, Your Honor.

D.E. 330 at p. 108.

"It is the firm rule in this Circuit that a trial judge has broad discretion in responding

to the jury's request for the transcript of a particular witness' testimony and will only be

reversed upon a finding of an abuse of discretion." United States v. Schmitt, 748 F.2d 249,

256 (5th Cir. 1984); United States v. Ortega-Urquidi, 420 Fed. App'x. 305, 308  (5th Cir.,

Mar. 16, 2011) (per curiam) (designated unpublished) (district court did not abuse discretion

in denying access to transcript in criminal trial).

In this case, the transcripts had not been prepared and the jurors expressed no

disagreement over the testimony. Counsel agreed with the district court's proposed response.

York does not claim prejudice from the Court's response and cites no authority for his claim

that appellate counsel's failure to raise the issue fell below reasonable professional standards.

7. *Appellate counsel provided ineffective assistance of counsel by his failure to argue that multiple counts of the indictment were multiplicitous*

York was charged with eight counts and convicted on all of them. York complains that he was convicted on multiple counts for the same conduct, i.e. that the indictment was multiplicitous. D.E. 399. York's claim is waived by his failure to raise it before trial. See Fed. R. Crim. P. 12(b)(3) ("The following must be raised before trial: . . .a motion alleging a defect in the indictment . . . ." York claims that appellate counsel's failure to challenge the indictment as multiplicitous on appeal constituted ineffective assistance of counsel.

Even if York's claim was not waived, it is without merit. An indictment suffers from multiplicity if a single offense is charged in several counts. See 1A Wright & Miller, § 142, at 10. But one act by the defendant can constitute a violation of several distinct statutes. See United States v. Maggitt, 784 F.2d 590, 599 (5th Cir. 1986) (noting that one act by the defendant may "violate two or more statutes and constitute independent offenses."). An indictment charging several offenses for the same acts is not multiplicitous where conviction under each statute allegedly violated requires "proof of an additional fact which the other does not." United States v. Tucker, 345 F.3d 320, 337 (5th Cir. 2003) (quoting United States v. Reedy, 304 F.3d 358, 363 (5th Cir. 2002)); United States v. Nguyen, 28 F.3d 477 (5th Cir. 1994).

York claims that "aiding and abetting" is the same thing as conspiracy. D.E. 399, pp. 1, 5-7. Count One charges York with conspiracy and Count Two charges him with aiding and abetting. To find conspiracy, the jury had to find 1) a knowing and voluntary agreement with one or more persons, 2) to commit a crime against the United States, and 3) one of the

conspirators committed an overt act in furtherance of that agreement. United States v. Rawls, 432 Fed. App'x. 367, 368 (5th Cir., July 11, 2011) (per curiam) (designated unpublished) (citing United States v. Krenning, 93 F.3d 1257, 1262 (5th Cir. 1996)). Aiding and abetting does not require evidence of agreement. Nye & Nissen v. United States, 336 U.S. 613, 619, (1949) ("For such aiding and abetting, the Government must prove: the elements of the substantive offense occurred; and the defendant associated himself with the venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed.") (internal citations and quotations omitted); United States v. Cowart, 595 F.2d 1023, 1030 (5th Cir. 1979) ("Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal where he consciously shares in a criminal act, [r]egardless of the existence of a conspiracy."); United States v. Goff, 847 F.2d 149, 175 (5th Cir. 1988) ("it is well established that conspiracy and aiding and abetting are separate punishable offenses."). Because conspiracy requires proof of an agreement and aiding and abetting does not, the counts are not multiplicitous.

Count Five charged York and Senegal with conspiracy to attempt to kill Tony Mason to prevent him from identifying them for their involvement in the robbing of University Federal Credit Union. Count Six charged York and Senegal with aiding and abetting each other in the attempt to kill Tony Mason to prevent him from identifying them for their involvement in the robbing of University Federal Credit Union. As previously discussed, conspiracy and aiding and abetting are not the same crime. Conspiracy requires agreement whereas aiding and abetting does not. Counts Five and Six are not multiplicitous.

Because the Second Superseding Indictment is not multiplicitous, appellate counsel did not fall below professional standards when he did not raise the issue on appeal.

>    8. *Trial counsel was ineffective because he failed to move for acquittal on Count Six and failed to file a motion for new trial on Count Six*

York claims that the evidence on Count Six, aiding and abetting Senegal in the attempted murder of Tony Mason, was so weak that counsel should have moved to acquit him of that count. At trial, counsel for York moved for an instructed verdict on all counts. The Court overruled the motion. York's claim is contradicted by the record and is without merit.

York also complains that counsel failed to file a motion for new trial on Count Six. York does not state on what basis counsel should have done so. Appellate counsel challenged the sufficiency of the evidence on all counts. The Fifth Circuit held there was sufficient evidence to sustain York's conviction on all counts. That opinion recites Winn's testimony that York admitted to shooting Mason with the same gun he used in the robbery of University Federal Credit Union. As a result, York cannot demonstrate prejudice from counsel's failure to file post-conviction motions attacking Count Six. No ineffective assistance is shown.

## D.    York's Motion to Dismiss for Lack of Subject Matter Jurisdiction

York filed a motion that was received by the Clerk on August 28, 2012, D.E. 412, in which he urges that this Court never had jurisdiction to try him for Counts 2, 3, 5, and 6. The government did not respond to this motion which was filed after the government's response to York's § 2255 motion.

1. *Counts Two and Three should be dismissed because the government allegedly failed to prove that the credit union was federally insured thereby depriving this Court of jurisdiction*

York claims the government failed to prove that University Federal Credit Union was insured by the FDIC. D.E. 412. The evidence at trial proved University Federal Credit Union was insured by the National Credit Union Administration Board, as alleged in Count Two of the Second Superseding Indictment. The evidence came in through the testimony of the government's first witness and its Exhibit 1.This claim is without merit.

York also claims error in the jury charge that referenced the FDIC and claims that the variance between the jury charge and indictment robbed this Court of jurisdiction. York cites United States v. Murrah, 478 F.2d 762 (5th Cir. 1973), in support of his position. Murrah states that proof of insured status is a necessary element of the crime and to establish federal jurisdiction. Id. at 764. When the government fails to prove federally insured status, a defendant is rightly acquitted or his conviction reversed. See United States v. Trevino, 720 F.2d 395, 401 (5th Cir. 1983) (reversing conviction for failure to prove necessary element of bank's insured status).

York's current challenge is to the sufficiency of the evidence of jurisdiction–an issue that the Fifth Circuit implicitly ruled upon and that may not be relitigated in this proceeding. United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions"); United States v. Rocha, 109 F.3d 225, 229 (5th Cir.1997). Moreover, a challenge to the sufficiency of the evidence is not cognizable in a motion to vacate because it is not generally a constitutional issue and should be addressed

on direct appeal. United States v. Forrester, 456 F.2d 905, 906 (5th Cir. 1972) (per curiam);

United States v. Eaglin, 2010 WL 1798939 at *5 (S.D. Tex., May 4, 2010) (designated

unpublished). York's complaint that the government's proof of jurisdictional facts was

insufficient is without merit and is also procedurally barred.

  2.  *Count Five should be dismissed because the indictment is allegedly insufficient*

  York claims that the indictment as to Count Five was insufficient. He was convicted

in Count Five of conspiracy to tamper with a witness as to the attempted killing of Tony

Mason in violation of 18 U.S.C. § 1512(k).[7] The witness tampering statute referenced in

Count Five was § 1512(a)(1)(C).[8] York complains that Count Five does not state the nature

of the proceeding mentioned in subsection (C) and his conviction must be reversed. D.E. 412

at p. 9.

  As an initial matter, York's complaint is too late. Rule 12(b)(3)(B) provides that a

complaint regarding the sufficiency of an indictment *must* be made before trial. Fed. R. Crim.

---

 [7]  "(k) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Id.

 [8]  "(a)(1) Whoever kills or attempts to kill another person, with intent to–

   (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, *or* release pending judicial proceedings;

  shall be punished as provided in paragraph (3)."

Id. (emphasis added).

P. 12(b)(3)(B).[9] It was not. Moreover, York did not raise this issue on appeal. Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either cause for his default and actual prejudice or that he is actually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999). York does not explain any impediment to previously raising this claims. It is procedurally barred.

Even if York's complaint was properly and timely brought, it is without merit. Subsection 1512(a)(1)(C) involves disjunctive elements. The evidence at trial proved that York and others conspired to prevent the communication by Tony Mason to a law enforcement officer *or* judge of the United States of information relating to the commission or possible commission of a federal offense, the identity of witnesses to the robbery of a federally insured credit union. The indictment sufficiently describes York's criminal conduct. His claim is without merit.

   3. *Count Six should be dismissed due to no proof of federal nexus*

_____

[9] "(3) Motions That Must Be Made Before Trial. The following *must be raised before trial*:

        (B) a motion alleging a defect in the indictment or information--but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense. . . ."

Id. (emphasis added).

York claims that the government failed to prove federal nexus with regard to Count Six. Count Six charged York and Senegal with aiding and abetting each other in the attempt to kill Tony Mason with the intent to prevent communication by Mason to a law enforcement officer or judge of the United States regarding the commission of a federal offense, to-wit, the identity of Senegal and York as individuals present in Mason's car after the robbery of August 11, 2005, of the University Federal Credit Union.

York's challenge to the sufficiency of the evidence of jurisdiction–an issue that the Fifth Circuit implicitly ruled upon--may not be relitigated in this proceeding. Kalish, 780 F.2d at 508 ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions"); Rocha, 109 F.3d at 229. Moreover, a challenge to the sufficiency of the evidence is not cognizable in a motion to vacate because it is not generally a constitutional issue and should be addressed on direct appeal. Forrester, 456 F.2d at 906; Eaglin, 2010 WL 1798939 at *5. York's complaint that the government's proof of jurisdictional facts was insufficient is procedurally barred.

E.     **Evidentiary Hearing**

The Court denies York's request for an evidentiary hearing (D.E. 376 at p. 11) because the motion, the files and records of the case conclusively demonstrate that he is not entitled to relief. 28 U.S.C. § 2255(b).

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although York has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

24

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that York is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. <u>See</u> <u>Jones</u>, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, York's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 376, 399) and his motion to dismiss and motion to show cause (D.E. 412, 416) are DENIED. He is also denied a Certificate of Appealability.

Ordered this 7th day of July, 2014.

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE